IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50814
Summary Calendar
_____


ROY E. STEELE, doing business as
R & R Investment Company,

                              Plaintiff-Counter
                              Defendant-Appellant,

                    versus

FEDERAL DEPOSIT INSURANCE CORPORATION
as statutory successor to RESOLUTION
TRUST CORPORATION, as Receiver for
Karnes County Federal Savings and
Loan Association,

                              Defendant-Counter
                              Claimant-Appellee,

COMMERCIAL FINANCIAL SERVICES,
INCORPORATED,

                              Defendant-Appellee,

AUSTIN REAL ESTATE SERVICES,
INCORPORATED, doing business as
Davis and Associates, and
SOVEREIGN MANAGEMENT COMPANY,

                              Defendants-Counter
                              Claimants-Appellees.

_____

Appeal from the United States District Court for
the Western District of Texas
(A94-CV-73)
_____

May 27, 1996

Before REAVLEY, SMITH and PARKER, Circuit Judges.

PER CURIAM:[*]

Steele, proceeding pro se, appeals an adverse summary judgment by the district court. Steele purchased a "loan package" from Commercial Financial Services, acting as agent for the Resolution Trust Corporation, on June 19, 1992.[1] He asserts the loan package conveyed an interest in, not only the defaulted loans, but also all pledged collateral. Steele instituted the instant quiet title action to establish his title in the collateral--a shopping center and an apartment complex. In numerous claims Steele has sued the RTC, the RTC's agent in selling the loan package (Commercial Financial Services), and the RTC's agent in selling the underlying real estate (Austin Real Estate Services). Each of Steele's claims hinge upon his theory of ownership of the underlying real estate. A magistrate judge recommended summary judgment be granted in the defendants' favor because Steele did not own the two properties. The district court adopted his recommendation, and Steele has appealed. We affirm.

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

[1]The Federal Deposit Insurance Corporation is the statutory successor to the RTC.

2

We review a grant of summary judgment de novo.[2]  It is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law.[3]  As the district court did before us, we review the facts in the light most favorable to Steele.[4]  This case concerns simply an interpretation of a contract.  The interpretation of an unambiguous contract is a question of law.[5]

In January of 1987, a San Marcus group executed a Deed of Trust, Security Agreement and Financing Statement whereby the group borrowed two amounts for a total of approximately $6.1 million from Karnes County Savings and Loan Association, and in exchange for the loan, Karnes County obtained a security interest in certain real estate.  On December 1, 1987, Karnes County foreclosed on the property.  At some point Karnes County went into receivership and the RTC acquired Karnes County's interest in the now bad loan together with the property acquired by Karnes County through the foreclosure proceeding.[6]  The RTC offered for

---

[2]United States v. Robinson, 78 F.3d 172, 174 (5th Cir. 1996).

[3]Robinson, 78 F.3d at 174.

[4]Robinson, 78 F.3d at 175.

[5]Neff v. American Dairy Queen Corp., 58 F.3d 1063, 1065 (5th Cir. 1995), cert. denied, 116 S.Ct. 704 (1996).

[6]In Texas,

[w]hen the owner of real estate executes a valid deed of trust, and then conveys an interest in the mortgaged property to a third party, the rights of the mortgagor's

3

sale Loan Package No. 921821 through its agent Commercial Financial Services in May of 1992 for the loan deficiencies created by the foreclosure. Apparently, the deficiencies were equal to the amount owed at foreclosure (principal plus past interest) less the amount for which the property sold. In September, after the sale of the loan package to Steele, the RTC, through its agent Austin Real Estate Services, sold the property it separately acquired from Karnes during the foreclosure to a third party, Sovereign Management Company.

Steele's complaint is premised upon his receipt of the Deed of Trust, a copy of the instrument itself, in the Loan Package. He asserts this created the impression that the Loan Package included the underlying collateral in the sale. The Loan Sale Agreement executed by Steele and the RTC contained a Bill of Sale and Assignment of Loans which becomes critical for our inquiry. The Bill of Sale <u>explicitly</u> reserved to the RTC any interest in the property acquired through foreclosure.[7] When the original

vendee are subject to the rights held by the beneficiary of the deed of trust. Thus, a foreclosure and sale under a valid deed of trust lien has the effect of passing all right, title, and interest that the mortgagor held at the time the deed of trust was executed, free and clear of the rights of any subsequent purchaser. <u>See</u> <u>Hampshire v. Greeves</u>, 104 Tex. 620, 626, 143 S.W. 147, 150 (1912).

<u>Motel Enterprises, Inc. v. Nobani</u>, 784 S.W.2d 545, 547 (Tex.App.--Houston[1st Dist.] 1990, no writ)

[7]The Bill of Sale and Assignment of Loans specifically provides that,

RESOLUTION TRUST CORPORATION, acting solely in its capacity

4

borrower defaulted on the loans and Karnes County Federal Savings & Loan Association foreclosed on the collateral securing the loan, the RTC "acquired" an interest in the collateral as Karnes' receiver.[8] "Since the foreclosure took place before the closing date . . . the collateral falls within the reservation clause of the Bill of Sale, and the RTC did not convey the collateral to [Steele.]"[9] When Karnes purchased the property at foreclosure, the RTC owned both the property and the loan deficiencies. It was the latter that was sold to Steele.

---

as either receiver or conservator of each savings association (each an "Association") as such Association and capacity of RTC is identified on Exhibit "A" (Assignor") hereto hereby absolutely sells, transfers, assigns, sets-over and conveys to R & R Investment Company, a company organized under the laws of Alaska, ("Assignee") without recourse and without representations or warranties, express or implied, of any type, kind or nature:

*     *     *

    (b) all principal, interest or other proceeds of any kind with respect to the Loans . . . but excluding any payments or other consideration received by or on behalf of Assignor prior to June 16, 1992 with respect to the Loans; provided, however, *that Seller shall retain all right, title and interest to any and all items of Collateral which, prior to the Closing Date, may have been foreclosed upon or otherwise acquired by Seller and/or the Association through enforcement of any Collateral Document or proceeding in lieu of such enforcement* . . . .

(Emphasis added).

    [8]Asset Restructuring Fund, L.P. v. Liberty National Bank and Resolution Trust Corp., 886 S.W.2d 548, 554 (Tex.App.--Austin 1994, writ denied).

    [9]Id. at 554

5

Steele complains that the RTC essentially had nothing to sell. Of course this is why he was able to purchase approximately $400,000 in bad debt for $13,091.68, without the real estate which was valued in excess of several million dollars. Throughout the loan sale agreement Steele was warned of the high risk nature of this transaction, that he should undertake considerable due diligence before consummating the transaction, and that the loans were being sold "as-is."[10] The summary judgment evidence indicates that despite such warnings Steele conducted <u>no</u> due diligence. Steele only purchased the bad debt, and that at a significant discount.

Finally, Steele asserts the United States Magistrate should have recused himself. Steele alleges that the magistrate judge created the appearance of partiality when he ruled "on an application against Steele without permitting input by Steele," thus denying him due proceess of the law. We find no merit to Steele's contention.

---

[10] In the invitation to bid by Commercial Financial Services, prospective bidders were warned <u>three</u> times in five pages to "PERFORM FULL DUE DILIGENCE <u>PRIOR</u> TO SUBMITTING BIDS. ALL BIDS ARE FINAL AS SUBMITTED. ALL ASSETS IN EACH PACKAGE WILL BE SOLD ON AN "AS IS" BASIS. . . ." The Loan Sale Agreement similarly warned potential purchasers that the loans were being sold "as-is," and that "Buyer has been urged, invited and directed to conduct such due diligence review and analysis . . . ." Loan Sale Agmt. §§ 7.7 and 7.8.

The district and magistrate court properly interpreted the Loan Sale Agreement and Bill of Sale and Assignment of Loans. Summary judgment was properly granted.

AFFIRMED.